378 N.E.2d 855 (1978)
L.F.R., Appellant,
v.
R.A.R., Appellee.
No. 778S141.
Supreme Court of Indiana.
July 27, 1978.
John D. Clouse and Michael C. Keating, Evansville, for appellant.
Gerald G. Fuchs, Evansville, for appellee.
PIVARNIK, Justice.
This cause comes to us on a petition to transfer from the Indiana Court of Appeals. The Vanderburgh Superior Court dissolved the marriage of petitioner L.F.R. and respondent R.A.R., retaining jurisdiction to determine the paternity of L.F.R.'s then unborn child. After the child's subsequent birth, the trial court heard the paternity issue and entered a judgment which declared that R.A.R. was not the father of the child born to L.F.R., his former wife. The Court of Appeals, First District, opinion by Robertson, C.J., Lowdermilk and Lybrook, JJ., concurring, affirmed the decision of the trial court. L.F.R. v. R.A.R. (1977), Ind. App., 370 N.E.2d 936.
The question presented for our review is whether the putative father, R.A.R., overcame the well-established presumption of legitimacy which applies when a child is conceived before the termination of the marital relationship.
*856 The record in this case demonstrates that L.F.R. and R.A.R. were married in May of 1975, and separated sometime about the first week of July, 1975, with L.F.R. filing for dissolution of marriage contemporaneously. After a number of interim proceedings, the trial court dissolved the marriage on March 16, 1976, but retained jurisdiction to determine the paternity of L.F.R.'s then unborn child. L.F.R. had objected to the court's proceeding to a final hearing before the child was born, but the trial court overruled her objection. The child was born on June 26, 1976, and the trial court heard the paternity issue on October 19, 1976. R.A.R. admitted at this hearing that he had seen and talked with L.F.R. after their separation, but he testified that he had no sexual relations with her after July 8, 1975, when he left her home, not to return. L.F.R. testified that she had intercourse with R.A.R. during July, August, and twice during mid-September which was the probable period of conception. L.F.R. also had corroborating witnesses indicating that R.A.R. slept with her in mid-September at Kentucky Lake. R.A.R. did not deny his presence at Kentucky Lake. However, he stated this incident took place in July and not in September. In fact, the evidence showed that he lived in the same general area as L.F.R. all of this time, and had access to her all during this time. He testified that he saw her and talked with her from time to time during this period, but had not had intercourse with her. There was also evidence which indicated that L.F.R. was keeping company with another man during September. After hearing the above evidence, the trial court found in favor of R.A.R., and entered a judgment finding him not to be the father of L.F.R.'s child.
The law is clear in Indiana that a child born to a married woman is presumed legitimate, and that such presumption can be overcome or rebutted only by irrefutable proof. Hooley v. Hooley (1967), 141 Ind. App. 101, 226 N.E.2d 344. In Whitman v. Whitman (1966), 140 Ind. App. 289, 292, 215 N.E.2d 689, 690, the Court of Appeals, citing Phillips v. State ex rel. Hathcock (1925), 82 Ind. App. 356, 360, 145 N.E. 895, 897, stated:
"[T]he presumption could be overcome by proof that the husband was impotent; or that he was entirely absent so as to have had no access to the mother; or was entirely absent at the time the child in the course of nature, must have been begotten; or was present only under such circumstances as to afford clear and satisfactory proof that there was no sexual intercourse."
As recently as 1971, this court said in Buchanan v. Buchanan (1971), 256 Ind. 119, 123, 267 N.E.2d 155, 157:
"The law indulges every presumption and charity in favor of the legitimacy of children and evidence repelling such a presumption must be conclusive...
"It is to be noted that the child has an interest here, and, although it was not a party to this action nor was it represented by counsel before the trial court, that court cannot, as an organ of the State, stand idly by and allow the parties before it to destroy that interest without clear and convincing proof. Therefore, the mere statements, admissions allegations or agreements made by the parties to this divorce proceeding standing alone are not sufficient to rebut the strong presumption of legitimacy which runs in favor of this child."
The Court of Appeals in the present case based its decision on the idea that although R.A.R.'s evidence was not of the "qualitative equivalent" of that which was found adequate for the exceptions to overcome the presumption, it was nevertheless the function of the trial court, rather than the appellate court to determine the credibility of the witnesses and to weigh the evidence. L.F.R., supra, 370 N.E.2d at 938-39. While this general statement of the review function of all appellate courts is true, it does not apply to the fact situation in this case. There is a particular burden in our law, based on public policy, to overcome the presumption of legitimacy of children. *857 The very conflict of evidence of which the Court of Appeals comments in this case is the one contemplated by the setting of the standard, and such evidentiary conflicts are thus presumed to be present in every case of this nature. For the putative father to merely state that he did not have relations with his wife when he had opportunity to, regardless of the quality or credibility of his testimony, is not sufficient to set aside the presumption. Where a child is born in wedlock, a trial court cannot rule against legitimacy, except on facts which prove conclusively that the husband could not have been the father. Buchanan, supra. In this case the child was conceived while the parties were married, and born after dissolution. However, it is clear that the dissolution of the marriage and the paternity determination of L.F.R.'s then unborn child, for support purposes, were a single proceeding. The better practice is for trial courts to refrain from granting a dissolution where the wife is pregnant unless circumstances dictate otherwise. In this case, however, the dissolution was granted first for reasons not stated by the trial court thus resulting in L.F.R.'s being unmarried at the time of the child's birth. We do not see why this unusual procedural sequence should be allowed to overcome or render inapplicable, the presumption of legitimacy. See Miller v. Robertson (1970), 147 Ind. App. 68, 258 N.E.2d 420. Therefore, neither the Court of Appeals nor this court is invading the province of the trial judge in judging the credibility of the witnesses. We need not weigh the evidence, other than to find that there is no evidence that qualitatively meets the test of overcoming the presumption of legitimacy. The facts here conclusively show that the husband did, in fact, have access to the wife.
Transfer is granted, and the opinion of the Court of Appeals in this case is vacated. This case is ordered remanded to the trial court with orders to set aside its judgment and to enter judgment consistent with this opinion.
GIVAN, C.J., and HUNTER, J., concur.
DeBRULER, J., dissents with opinion in which PRENTICE, J., concurs.
DeBRULER, Justice, dissenting.
I must respectfully dissent to the opinion and judgment of the Court. Here the conception of the child occurred after separation of the parties and after legal proceedings for dissolution of their marriage relationship had been instituted. The birth of the child occurred after the marriage of the two had been dissolved by court decree. I find no cases of this Court which support the view that a presumption of legitimacy arises under circumstances such as these. As a legal matter this presumption does not arise at all unless the child is born during wedlock. Buchanan v. Buchanan (1971), 256 Ind. 119, 267 N.E.2d 155. Here the marriage of the parties was dissolved by court decree several months before the birth of the child. If the court were correct in its conclusion that this child was born in wedlock in spite of the fact that its parents were not married at the time of its birth, as a new legal matter, I would hold that evidence showing that conception occurred after the institution of legal proceedings which ultimately result in dissolution of the marriage relationship, in conjunction with direct evidence of no intercourse between the wife and husband during the period of conception, would constitute sufficient evidence on appeal to overcome such presumption and to sustain a negative decision of the trial court on the paternity issue.
PRENTICE, J., concurs.