Connie MINTON, Appellant–Defendant,

v.

Marc E. WEAVER, Appellee–Plaintiff.

No. 82A01–9801–JV–19.

Court of Appeals of Indiana.

June 18, 1998.

Transfer Denied Nov. 4, 1998.

Jeffrey A. Modisett, Attorney General, Janet Brown Mallett, Deputy Attorney General, Indianapolis, for Appellant–Defendant.

John D. Clouse, John P. Brinson, Evansville, for Appellee–Plaintiff.

## OPINION

STATON, Judge.

Connie Minton appeals a jury verdict in favor of Marc Weaver with respect to her petition to establish the paternity of her child. Connie raises one issue on appeal: whether the jury's verdict is clearly erroneous.

We reverse.

The evidence most favorable to the verdict reveals that Connie gave birth to her daughter, A.M., on January 10, 1996. Connie married Mark Minton on December 15, 1995, and remained married to him as of the date of A.M.'s birth. Both Connie and Mark Minton testified that they did not have sexual intercourse at any time during 1995.

On the other hand, both Connie and Marc Weaver testified that they had sexual intercourse approximately six or seven times between March and May of 1995. Prior to trial, Weaver, Connie, and A.M. submitted to a DNA test which revealed a 99.97% probability of Weaver's paternity. A jury determined that Weaver is not A.M.'s biological father; Connie appeals.

When reviewing an appeal from a negative judgment, the trial court will be affirmed unless all evidence leads to the con-

clusion that the trial court's verdict is clearly erroneous and against the logic and effect of the facts. *Matter of Estate of Banko,* 622 N.E.2d 476, 480–81 (Ind.1993), *reh. denied.*

The trial court instructed the jury regarding IND.CODE § 31–14–7–1(1) (Supp.1997) which provides that a man is presumed to be a child's biological father if the man and the child's biological mother were married to each other at the time the child was born. Thus, based upon this instruction, the jury was required to find that Mark Minton is A.M.'s biological father absent direct, clear, and convincing evidence which rebutted this presumption. *See Fairrow v. Fairrow,* 559 N.E.2d 597, 600 (Ind.1990).

■ Here, the evidence was uncontradicted that Weaver and Connie engaged in sexual intercourse during the months in which A.M. must have been conceived. Too, both Connie and Mark Minton testified that they did not have sexual intercourse during that time. Perhaps most significantly, Connie also presented DNA evidence which indicated that Weaver's probability of paternity is 99.97%. The legislature has recognized and approved of the value of blood test results as a means of establishing paternity. *See* IC 31–14–7–1(4) (providing that a man is presumed to a be a child's biological father if the man undergoes a blood test which indicates with at least a ninety-nine percent probability that he is the child's biological father). Taken as a whole, the evidence of Connie's and Weaver's sexual activity, Connie's and Mark Minton's lack of sexual activity, and Weaver's blood test constitutes direct, clear, and convincing evidence that Weaver, and not Mark Minton, is the father of A.M. Accordingly, the jury's finding that Weaver is not the father of A.M. is clearly erroneous and against the logic and effect of the facts.

■ Weaver argues that the jury's verdict is not erroneous because Connie failed to rebut Mark Minton's presumption of paternity. He points to *Murdock v. Murdock,* 480 N.E.2d 243 (Ind.Ct.App.1985), *reh. denied,* which provides a list of the type of direct, clear, and convincing evidence which may be used to rebut the marriage presumption. In *Murdock,* this court identified the following

six examples of appropriate rebuttal evidence:

> [That a husband] (1) is impotent; (2) was absent so as to have no access to the mother; (3) was absent during the entire time the child must have been conceived; (4) was present with the mother only in circumstances which clearly prove there was no sexual intercourse; (5) was sterile during the time the child must have been conceived; [or] (6) is excluded as the child's father based upon blood grouping test results.

*Id.* at 245 n. 6. Weaver correctly notes that Connie presented no evidence which falls within these examples. However, the categories contained in *Murdock* are merely examples. It is possible that other evidence can constitute direct, clear, and convincing evidence capable of rebutting the marriage presumption. A DNA test of another man which indicates a 99.97% probability that the man is a child's father combined with uncontradicted evidence that the man had sexual intercourse with the mother at the time the child must have been conceived is an additional example of the type of direct, clear, and convincing evidence which can rebut the marriage presumption. *See* IC 31–14–7–1(4).

■ Finally, Weaver argues, in essence, that the jury was capable of inferring that the DNA test results establishing his paternity were mistaken. At trial, Weaver's attorney conducted a vigorous cross-examination of Connie's DNA expert, during which the expert admitted that no test is conclusive of paternity and that an error in any step of the DNA testing procedure could give rise to an error in the test results. These general admissions, that no test is perfect and that the testing procedures *could* be flawed, do not constitute evidence that the particular test results for Weaver were erroneous. Thus, we do not believe that a reasonable juror could have concluded, based upon these limited admissions, that the DNA test results were unreliable.

We conclude that all of the evidence in this case leads to the conclusion that Marc Weav-

er, not Mark Minton, is the father of A.M. The jury's verdict is clearly erroneous.

Reversed.

DARDEN and FRIEDLANDER, JJ., concur.